You may be seated. The clerk will call the next case. May it please the court. My name is Charles Crowley, attorney for the Pelham, excuse me, the Union Policeman's Benevolent Labor Committee and Officer Salvador Lopez. The narrow issue before the court today is whether the parties had an agreement to arbitrate matters of discipline. I'll review some of the brief, briefly the facts of the case. On August 11th, Bartonville police officer, excuse me, police chief Brian Fangle filed charges against Officer Salvador Lopez with the Board of Fire and Police Commissioners. Officer Lopez remained on full duty. He was, he had a badge and a gun, was out on the street. He even received a commendation from the chief during that time in which he ran into a burning building and attempted rescue. So it, there were, there were actions taken that wouldn't quite coincide with someone who was about to be terminated. On October 3rd, however, there was a hearing before the Board of Fire and Police Commissioners and at the conclusion of that hearing, the board did elect to terminate Salvador Lopez. In response, the union filed a grievance invoking the arbitration clause of the 2013-2016 collective bargaining agreement. The village filed a complaint for declaratory judgment and stay of arbitration in the circuit court. The trial court granted the village motion for summary judgment stating in its order, there is no provision in the contract between the village of Bartonville and the PDLC stating or even inferring that the grievance procedure should or could be used in determining disciplinary matters. It was a fairly strong order by the circuit court. Under Donaldson, the State Supreme Court's decision, the court must order the parties to proceed to arbitration in two instances, either if the court finds that there clearly is an agreement to arbitrate or if it's unclear whether the dispute falls within the scope of arbitration. Still, the court must, under Donaldson, order the parties to proceed to arbitration and then the arbitrator decides whether or not the dispute falls within the scope. Only if the parties clearly do not agree to arbitrate should a stay of arbitration be granted. The village and the union are parties to a collective bargaining agreement that arises under the Illinois Public Labor Relations Act. The collective bargaining agreement contains a grievance procedure as mandated by the Act. That grievance procedure appears in Article V of the contract and it also contains a, really the broadest of terms that a contract could define a grievance as. It defines a grievance as a dispute or difference of opinion involving the meaning, interpretation, or application of the provisions of this agreement. In addition to that, it states in Article V, Section 5.6, that the procedures set forth in Article V are the sole and exclusive procedures for resolving any grievance. The contract at Article VI covers discipline. The provisions of Article VI express the party's agreement that discipline be progressive and corrective and for just cause. It even references termination specifically and states that termination will be reserved for extreme cases. Section 8 of the Labor Act requires that anything recited in a collective bargaining agreement be subject to the grievance arbitration unless mutually agreed otherwise. Now this court took up a case dealing with the same issue in 2012 called Thompson. And in Thompson, the court restated that statutory language as such. The relevant inquiry in a case arising under the Act is whether the parties, through their written agreement, show an intent to exclude from arbitration the disputed matter. So the court recognized that unless there is an agreement found within the collective bargaining agreement to exclude a provision of the contract from the grievance arbitration procedure, then it will, by default, be subject to that arbitration clause. The trial court erred by applying a test that is the inverse of the standard that this court applied in Thompson. The court applied a standard of inclusion rather than a standard of exclusion. To say it another way, it sought out a provision in the collective bargaining agreement which specified the inclusion of discipline within the scope of the arbitration clause. This is the opposite of what the court found in Thompson. Again, in Thompson, the court determined that the provision that the trial court should have sought out is a provision that said specifically that discipline or any provisions related to discipline are not subject to the Article V grievance procedure. The order of the trial court made no findings of a provision which would exclude, of a specific provision, which would exclude Article VI from Article V. Likewise, the court did not conclude that such a provision exists. Rather, the village has acknowledged the silence of the collective bargaining agreement with regards to Article VI and Article V. It's repeatedly argued that Article VI discipline provisions are not covered by Article V because they don't specifically reference each other. Again, this is the inverse of the test under the Labor Act and under Thompson. Furthermore, the Board of Fire Police Commissioners are as a creature of statute, and as a creature of statute, the members have only the authority granted to it under the Municipal Code, specifically Section 10-2.2-17. That section grants the charges of discipline against an officer to determine whether or not cause exists. Nowhere in the Municipal Code is the Board granted any authority to interpret provisions of the contract or to play any role in terms of the disputes over the administration of the contract. Neither party asked the Board to do so, and again, the order of discharge did not issue any judgment regarding the collective bargaining agreement. The village relies heavily on a 2005 Second District case of the City of Rockford in arguing for the application of race judicata. While the fact pattern seems similar at first glance, there are some key distinctions I'd like to go over. First, the Union in the City of Rockford never disputed the first prong of race judicata. The Union did not dispute whether a final judgment was rendered by a court of competent jurisdiction, and that's the key. A competent jurisdiction, and accordingly, the court did not address that issue. And as I have stated earlier, the Board is a creature of jurisdiction. It has only the jurisdiction granted to it under the Municipal Code. Second, even though the Board did not have the authority to interpret the collective bargaining agreement, the Union in the City of Rockford put the contract at issue by entering the contract into evidence and claiming as a defense provisions of the collective bargaining agreement. The City of Rockford entered the CBA and raised the violations of the contract as a defense to the disciplinary charges. In the case at hand, neither the village nor the Union ever placed the collective bargaining agreement into evidence, nor were any arguments made in terms of the application or administration of the collective bargaining agreement. And third, the case was decided prior to the 2007 amendments to the Municipal Code. Prior to 2007, there was a distinction drawn between a home rule and a non-home rule municipality. The City of Rockford is a non-home rule municipality, whereas the village of Bartonville is a home rule municipality. Even in 2005, a home rule municipality was a mandatory subject of bargaining for a municipality and a union to bargain over whether or not there was going to be an alternative or supplemental process to deal with discipline, namely an arbitration from a collective bargaining agreement. The States Different Court has recognized through Section 8 of the Labor Act that the legislature has adopted a preference for grievance arbitration in the public sector. The Municipal Code was amended in 1999 by Public Act 91-650 to reflect this legislative preference. However, it was only mandated for the home rule, not the non-home rule at that time. The Municipal Code was amended in 2007 by Public Act 95-356, and any language referring to non-home rule or making any rights to whether or not it is appropriate to have such an alternative procedure or supplemental procedure was taken out of the Municipal Code, and so that the legislative preference for arbitration could be clearly established whichever public sector type of municipality you were dealing with. So the case of the City of Rockford, while arguably the most important, arguably good law under that statute is not applicable in this case because first, the statute has changed, and second, it was a non-home rule municipality. Furthermore, if the Labor Act is to have a conflict in regards to grievance arbitration, the right to grievance arbitration, the Labor Act would prevail against the Municipal Code or the administrative law review. However, no such conflict exists because the very language of the Municipal Code allows for this very kind of grievance and arbitration procedure. The dealers knowingly entered into a contract which had just cause for discipline that required the discipline be progressive and corrective and that it should not be a reserve termination for extreme cases. It's a misuse of the judicial process for the village to now seek out a way to circumvent the agreement it entered into because what it's seeking is the lesser standard which is merely cause under the Municipal Code rather than the standards that it entered into with the union. So I would conclude by saying that although race judicata should not apply, the first prong cannot be met because there is not proper jurisdiction. And because there is not proper jurisdiction to review the provisions of the agreement, then there is, there cannot be, the third prong cannot be met because there is no review of whether there was just cause, whether there was progressive or corrective discipline, and whether it was as the contract defines it, an extreme case. Nor does the board have any authority to determine whether it's a violation of Section 5.6 in which it is the contract states that the grievance procedure in the contract is the only process, the sole and exclusive process for dealing with a grievance. What steps did the union take prior to the board hearing? The union communicated to the board and to the attorney for the city that it believed that there was a right to grievance arbitration. This is a right to grievance arbitration. The city stated that the only way for it to terminate was through the Board of Fire and Police Commission, and the union replied that whether the discipline comes from the chief of police or the Board of Fire and Police Commission, that that discipline would be subject to the grievance procedure. And that was stated both in the many days ahead of the hearing, and it was stated at the outset of the hearing, but the board decided to proceed. And how was that communicated? It was multiple phone calls, and then it is part of the, it's in the record of the transcript of the Board of Fire and Police Commission as an opening issue. Thank you. Thank you. Thank you, Mr. Crowley. Thank you. Mr. Snodgrass. Good afternoon. May it please the court, my name is Ken Snodgrass. I have Kevin Day with me from my office today and worked on the brief. Mr. Crowley. We're here today to ask this court to affirm Justice Mack's decision granting the motion for summary judgment. As you know, the standard of review is de novo here, and that means it can be affirmed on any basis. I want to talk about some of the basic factual underpinnings about this case. The termination hearing before the Villa de Bartonville Police and Fire Commission occurred on October 3, 2014. The Benevolent was there. They represented Officer Lopez. They participated in the hearing. They cross-examined witnesses. They gave a closing argument. They had an opportunity to be heard. Now, at the outset, they argued that the board had violated the 30-day rule of the Illinois Municipal Code applying to police and fire commission boards. And in fact, they had filed a declaratory judgment on September 29, approximately four days before this hearing regarding that particular issue. They also brought up the fact that the matter was subject to grievance and arbitration provisions of the collective bargaining agreement, but there was no pending grievance at that time. No pending grievance was filed until after the decision of the board. Those arguments were denied. We proceeded to a full hearing. At the close of that hearing, it was orally announced by the board that Officer Lopez was discharged. That order was served on October 30, 2014. The first time a grievance was ever filed regarding the collective bargaining agreement was on October 13, 2014, which was approximately 10 days after the pronouncement by the board. On November 21, 2014, the village filed a complaint for declaratory judgment and stay of arbitration. What's important to note in this case, I believe, is there was never an administrative review filed under the administrative review law regarding the actions of the police and fire commission. Let's think about that for a minute. If a review is filed, it's not only those issues that could have been argued, but in addition, the underlying merits of the discharge. That never happened. The benevolent, in our case, eventually filed an answer affirmative defense and counterclaim to our plaintiff's complaint seeking a DAC action in the stay of the proceeding. At that time, I believe it was February of the following year, the counterclaim sought grievance arbitration. If, let's just imagine for a moment that there was an agreed upon grievance procedure, when would the union file a grievance? I think if you look at some of the case law regarding that, if you look at the Rockford case, they talked about the fact what was important to them in that case was that the grievance was filed after the board had heard the case, which is the same instance we have here. So my argument would be if they were to file a grievance regarding the proceeding going in front of the fire and police commission, it should have been fired beforehand. What would they have been grieving before? Before there was any... The procedure of proceeding in front of the police and fire commission regarding the termination hearing, which they were well aware of. So it isn't the fact... The grievance isn't about the termination, but about the procedure. The procedure. And then they would have had the opportunity after the board had ruled by way of the administrative review to challenge the underlying decision by the board as well as those other issues. And that gets us into the race-judicata argument. I think it's a very strong argument in this case. What we have here... This court should be well aware... His action, though, that he filed was to grieve the termination. Pardon me? And he said that he didn't file his grievance until afterwards, but he grieved... Are you saying that because he didn't grieve the procedure, or what is it you're saying? Well, I'm saying at that point in time, before the hearing, he could have filed a grievance regarding the procedure. He could have also filed an injunction to enjoin the board from moving forward, which is also referenced in the Rockford case, I believe, that he would have had that opportunity. Rather than do that, he went forward with the hearing and participated. A decision was made based upon their participation. This wasn't something done in absentia, with Mr. Lopez not there. He actively testified at the hearing. They actively cross-examined witnesses.  I think what's also important to note before this court, there's a separate appeal by the Neville, which probably this court is well aware of, regarding the board's jurisdiction to conduct the October 3rd termination hearing based on the fact that the hearing didn't take place within 30 days. That's Appellate Court Case No. 3-15-0520. That involves them attempting to use the Illinois Municipal Code and say, you didn't have jurisdiction because you didn't do the hearing in a timely manner. Therefore, any ruling you made is inappropriate. So now they're using the Illinois Municipal Law as a sword in terms of trying to avoid the actions of the Police and Fire Commission. So we have two different, and we don't represent the board on that separate appeal. There's a separate law firm that's representing them. And I believe that, I don't believe oral arguments have been scheduled on that, and I believe that there may have been no objection to the request to waive those oral arguments. But what it gets down to is now we have a two-front battle here. On one hand, they're attempting to use the Illinois Municipal Law and the 30-day time period contained in that section to avoid the actions of the Police and Fire Commission. In doing that, they admitted that the board was empowered to conduct hearings regarding administrative discipline charges filed by the Village of Bartonville as to its police officers. That's in the pleadings where they admit that? I think they're required to file that because if they were not to prevail here, the time would have run on their other opportunity to appeal, to have review of the decision of the Police and Fire Commission if they don't. Well, I think... Yeah, would they have been required to raise that issue in an appeal? Sure, I agree with that. But my point is that they're using that same Illinois Municipal Law which governs the Police and Fire Commission to try to avoid the ramifications of the decision made by the Police and Fire Commission. That's what I think I'm trying to get at there. But we have a two-front battle here now. We've got this over here, and now on the other hand, they're arguing that the board didn't even have authority to hear the case because of the briefings provisions of the collective bargaining agreement. But we're not at a point of judicial stop-and-go right now because there hasn't been a ruling one way or the other. Well, that's an interesting issue because... You have to apply, you have to have a successful... You have to have one in one court versus the other. Well, the argument is that here we would have... Those issues could have been appealed to the circuit court. And that's why we're saying the race judicata issue kicks in based on the elements of race judicata. And we're also pointing out that that's the Rockford v. Unit 6 case. And to be clear on that, ours is the 2005 case. There's a separate case that's cited in the pleading. I think it's 2002, but ours is the 2005 case. Where they filed a subsequent grievance challenging the discharge and board authority, and they appealed it in that case to the circuit court under the Administrative Review Act. It was affirmed, and then they went forward with the grievance procedure. You know, in your brief, you distinguished the Donaldson case. But is that distinguishable? I mean, in Donaldson... Normally, under contract interpretation, if you don't have something in there, you don't find it in there. But Donaldson is sort of like a flip of that, normal contract principles, because in Donaldson, the Supreme Court of Illinois said, first, if it's clear the dispute falls within the scope of the arbitration clause or agreement, the trial court has to compel arbitration. Agreed. Second, if it's clear that the dispute does not fall within the scope of the arbitration clause, the trial court must deny the motion to compel arbitration. And you cite that on page 31 of your brief. However, if it's unclear or ambiguous, and this is the part that's the opposite of normal contract principles, if it's unclear or ambiguous whether the dispute falls within the scope of the arbitration clause, the matter should be referred to the arbitrator to decide whether it's fair. That's what Donaldson says. Now, that's the flip side of normal contract principles. And here, there's really not a... Is there really a clear statement that... You know, it's sort of... There's another section in it, but there's not a... There's not a statement that it is or isn't. I think what we tried to argue, Your Honor, was the difference between Section 5 and Section 6 of the collective bargaining agreement. And since Section 6 was not referenced in the grievance procedure, therefore, we made that argument. We also made the argument on past practice by Chief Fingal's affidavit, which was not rebutted. I think we also tried to distinguish... They talked about the Thompson case. In that case, if you read that, there was an agreement which was clearly specific to the arbitration. So, I mean, that was, on its face, a very easy case to decide. But see, the reason I'm not bringing up Thompson, but bringing up Donaldson, is if it's determined in the ennoble that it doesn't say one way or the other, it appears that the Donaldson case suggests to us that we'd have to remand this for a decision to follow the procedure Donaldson sets up. It's for an arbitrator to decide whether it's a proper thing to arbitrate or not. If there's not a clear statement that it's one way or the other, and again, contrary to normal contract law, our Supreme Court has said, then the arbitrator decides it. In assuming you find that there's, between the two sections that we've argued that we believe support our position, that it's not subject to grievance procedure, a secondary argument, if I may, is the fact that the securitist route we've taken to get here today is a little odd to me in some respects. Because if this would have been appealed under the Administrative Review Act, these issues would have all been together and decided in front of this Court. The irony is, if it would have been appealed under the Administrative Review Act, it would have been in front of Judge Mack, the same judge who heard our declaratory judgment, because it's the same courtroom. Why they didn't do that, I don't know. Thank you. I sort of don't understand why certain roads were taken, certain roads were not taken. But that doesn't prevent them from being able to raise the Donaldson case here. What is precluding them from doing that? If there's nothing in the contract agreement, what is it in the municipal code or the administrative law, or principles of res judicata, or any of those things that are preventing them from raising, and they raised Donaldson in their brief, and that's why you argue about distinguishing Donaldson. But if Donaldson fits, what stops us from being compelled to say, well, you've got to have that done following the Donaldson case? I think what stops you from doing that is basically reviewing the Rockford case we've cited, which is almost on all points here. There's also discussion, if you look at the Rockford decision, I believe, there's some third district cases that are discussed regarding the judicial economy arguments that were being made, those being the city of those two cases, Your Honor, being the village of Creek Corps and the Peoria Firefighters Local 544, where they discussed the, which was discussed in the Rockford decision. There's also discussed, I believe, in the Rockford decision, they make this argument between cause and just cause in trying to make that some sort of a distinction here. I think that's what prevents you from having to remand it back because they had their bite of the apple. They had an opportunity to appeal those matters, and they didn't. And I think by basically seeing what the, I mean, you could look at it from a jaundiced eye here, I guess, as well. You could look at it from the standpoint and say maybe they were looking to see what the police and fire commission did and then decided, well, now we're going to do something different. And I don't think they can do that based on the Rockford decision. I think they were tied in when they raised those arguments in front of the board to go forward and make those arguments in front of the circuit court, the same circuit court judge that heard our declaratory judgment action and our action for summary judgment. Am I done? Thank you. I appreciate it. Thanks for your time. Thank you, Mr. Cedric. Mr. Crowley for a rebuttal. I just have what should be a brief rebuttal. The union has never claimed that the board doesn't have the authority to do what the board does have the authority to do. But we made clear that before the hearing ever took place that that is not the place for a grievance and that there is a contractual right to a grievance for disciplinary matters. So the union got the impression from the village that this board hearing was going to take place whether we wanted it to or not. So we might as well be there. And even though counsel for the village keeps commenting on the fact that there was a closing statement by the union, the crux of that closing statement was to again acknowledge that there is a collective bargaining agreement and if any adverse employment action is taken by the board, then the union has the right to grieve that discipline under the collective bargaining agreement that both sides are a party to. I would also just add that going the path of the administrative review law which counsel for the village keeps seeming to suggest is what we should have done would arguably violate the party's agreement if we were to play out arguments of a contractual nature like a grievance, that would violate the contract which says that a grievance will be subject to arbitration as the sole and exclusive realm of the grievance. Anyone else have any questions? Thank you. Thank you both. Thank you all for your argument here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible.